WARREN R. HILDRETH *v.* H. N. FITTS, APPELLANT.

*Sale. Change of Possession. If Property is in the Possession of Third Party, such Party must Understand that he is Keeping it for Vendee. Evidence. Trespass.*

1. W. stored his sleighs and wagons in P's cider mill near by. While there he sold the one in dispute to H., the plaintiff; but it was not moved at the time of sale. After a few months P. set it, with the rest, outside, and so nòtified W. W. thereupon, notified H., and H. engaged W. to get it removed to some other place. W. employed his own son; and the son moved it to O's barn. It did not appear what O. said, or that he knew the sleigh had been sold to H. *Held*, that there was not a sufficient change of possession.

2. When personal property sold is in the control of a third party, such party must understand that he holds it for, and that his possession is the possession of the purchaser, or it is attachable by the creditors of the vendor.

3. When an officer is about to attach property in the possession of some party other than the defendant in the writ, he is bound to observe and inquire; observe that it is in the apparent possession of such third person, and inquire whether such apparent possession is in his own right, or the right of some person other than the defendant. But the officer is not bound to inquire further of other parties.

4. The vendee must prove that the possession of such third party is his own possession, rather than that of the vendor; and that the place where the property was situated at the time of the attachment was in fact hired for him for the purpose of storing or keeping it.

5. What the vendor said, *after the sale* as to the ownership of the property, is not admissible as an admission, but only to impeach him as a witness; hence, he should first be inquired of, when on the stand, as to what he said, in accordance with the rules pertaining to the use of such testimony.

6. In determining the value of a sleigh the witness was properly allowed to state how much the several parts were worth, as the body, pole, running part, &c.

7. What an article brings at a sheriff's sale, at, or near the time of conversion, is admissible evidence on the question of damages.

THIS case was tried at the September Term 1880. Plea, the general issue, with notice of taking as a deputy sheriff on attachment, and selling on execution in favor of one Plimpton against one Waite. Trial by jury, VEAZEY, J., presiding.

The facts sufficiently appear in the opinion of the court, excepting the following.

The plaintiff and Waite both testified that he paid for the sleigh. Waite's son was a boy fourteen years old, and lived at home working for his father in the usual way of boys at home. He had principal charge in his father's absence. Orcutt was at home when the sleigh was taken there and knew of it. He is now dead, and this boy was away from home at the time of this trial, and was not a witness, and it did not appear what was said between the boy and Orcutt. Waite's sleighs and wagons in the cider-mill were moved into a meeting-house shed near by, but none of them to the Orcutt barn, except this one. Waite testified he had no control over the sleigh after he sold it. The plaintiff testified he did not know who occupied the cider-mill when he bought the sleigh, but saw it there, and Waite said it could remain there until the mill was wanted for making cider; and he left it there until he directed its removal in the fall, as aforesaid. The plaintiff paid nothing for the storage of this sleigh in the cider-mill, but Waite paid the same storage after the sale as before. No price was fixed, but he used the mill in this way for several years, and was to pay what was fair. Waite's son knew that the plaintiff had bought the sleigh when he moved it to Orcutt's. Waite testified that he did not know to what place his son removed the sleigh until his son told him, and that he had no possession of it,

or anything to do with it afterwards. The plaintiff learned that Waite's son moved it to Orcutt's barn, and approved of it.

*E. L. Waterman*, for the plaintiff.

There was no fraud in fact. The sale was *bona fide*, and the property actually paid for. Waite never had any control over it, after he sold it. There was no fraud in law. When plaintiff bought the sleigh it was on premises of a third party. In the fall plaintiff procured Waite's boy to move it for him. He knew it was plaintiff's sleigh ; moved it to Orcutt's barn with his knowledge, and when plaintiff was informed to what place he had removed it he approved of it.

This was a sufficient change of possession as against everybody. *Bailey* v. *Quint*, 22 Vt. 474 ; *Hammond* v. *Plimpton*, 30 Vt. 337 ; *Flanagan* v. *Wood*, 33 Ib. 332 ; *Ridout* v. *Burton*, 27 Vt. 383 ; *Stanley* v. *Robbins*, 36 Vt. 438 ; *Allen* v. *Knowlton*, 47 Ib. 512 ; *Chase* v. *Snow*, 48 Ib. 436. Finding the sleigh on premises of a third person, defendant was put upon inquiry.

In cases therefore, of joint possession of property, which, when sold or attached, was in the hands of the vendor or debtor, the creditor is not bound to inquire. It is sufficient if he carefully observed.

*Davenport & Eddy*, for the defendant.

That rule is, where goods in the possession of a third person are sold, mere notice of the sale given by the *purchaser* to such third person, will not protect them from attachment by the creditors of the vendor. In order to defeat the said right of attachment, such third person must consent to keep them for the purchaser. *Whitney* v. *Lynde*, 16 Vt. 579 ; *Rice* v. *Curtis*, 32 Vt. 460. In the case of *Flanagan* v. *Wood*, 33 Vt. 337, the possession of the property was in the hands of the hired man of the debtor. The court held that this was not a sufficient change. And if the vendor himself could not give the notice, we submit that a man in his employ, and at his request, could not give it.

If the vendor himself cannot give notice to the bailee of the change of possession, he could not himself place the property in

the hands of the bailee in a way to complete the change of possession. If he himself could not do it, his son being in his employ could not do it at his request, as what the son or the person in the employ of the vendor did was the act of the vendor himself. *Bailey* v. *Quint*, 22 Vt. 474; 30 Vt. 337.

The opinion of the court was delivered by

Ross, J. The defendant excepted to the holding of the County Court, that the evidence showed a sufficient change of possession of the sleigh to protect it from attachment as the property of the vendor. The sleigh was purchased by the plaintiff while it was being stored by Waite, the vendor, with other sleighs and wagons in the cider-mill of Pierce. So long as it remained at that place, there was no change of possession. The vendor hired and had possession of the cider-mill for the purpose of storing his wagons and sleighs. Did what transpired afterward show a change of possession? Waite's sleighs and wagons, and this among them, were removed from the cider-mill by Pierce. Knowledge of their removal was carried by Waite to the plaintiff; and the plaintiff thereupon engaged the vendor " to get some one to move it for him to some place for storage, or put it under cover, until he could get round and get it, and Waite had his son attend to it, and he moved it to Orcutt's barn." The son was working for his father, and had the principal charge of his business in his father's absence. Orcutt was at home when the sleigh was taken to his barn ; but it was not shown what took place between the son and Orcutt, if anything, at the time the sleigh was moved there. This, in substance, was the evidence to show a change of possession. If the son hired Orcutt's barn for the plaintiff, and placed the sleigh there for him, thereafter it would be in the plaintiff's possession, and protected from attachment on the debts of the vendor. *Bailey* v. *Quint*, 22 Vt. 464 ; *Pettingill* v. *Elkins*, 50 Vt. 431. To protect the sleigh from being attached as the property of Waite, the burden was upon the plaintiff to show that the barn was in fact hired for him for the purpose of storing the sleigh. The most he shows, is, that he engaged the vendor to get some one to get the sleigh stored somewhere for him. This comes short of

showing that the barn was hired of Orcutt for the plaintiff, and in his name, so that when the sleigh was placed there, it was put into his possession. If the agency of the son for the plaintiff in the transaction was not disclosed to Orcutt, Orcutt would have the right to infer that he was acting for his father, the vendor, or for himself. If an agent does not disclose his principal, he binds himself as well as his principal, and the person dealing with him, may hold the agent to the fulfilment of the contract, or, when the agency becomes known, look to the principal therefor. Hence, in determining to whom Orcutt rented his barn for storing the sleigh, it became material to show whether the son disclosed his agency, if he acted in fact in that capacity, in the transaction. To give the possession of the barn for storing the sleigh, in fact to the plaintiff, Mr. Orcutt must have understood he was renting to him. The officer, when about to attach property in the apparent possession of a person other than the defendant in the writ, is both bound to observe and inquire. He is to observe the fact that it is in the apparent possession of such third person, and to inquire whether such apparent possession by such third person is in his own right, or the right of some person other than the defendant in the writ. The apparent possession of such third person would indicate *prima facie* that he was the owner. Inquiry might reveal that his apparent possession was the actual possession of some other one than himself, possibly the defendant in the writ. The purchaser, to protect himself against an attachment of the property bought on the debt of the vendor, if he place the property in the apparent possession of a third person, must leave it there, under such circumstances that the attaching officer can by inquiry learn whose possession his apparent possession is. Nor, do we think, such officer is bound to inquire beyond the person in whose apparent possession he finds the property. If he was bound to inquire beyond the person having the control of the property, and to follow up every clue from person to person, and from place to place, which such third person might be able to give him, the property might be spirited away before he could gain any reliable information as to whether he could safely attach it on the writ, and the ends of justice be defeated.

No decision has yet been made that held the officer to inquire beyond the person who had the property in his control. From the nature of the duty of the officer, and from the duty of the purchaser to effect a change in the possession of the property purchased from the vendor to himself, the third person, having the control of the property purchased, must understand that he holds the control for, and that his possession thereof is the possession of, the purchaser. Otherwise there is no apparent, open change of possession, available to the creditor, or the officer making the attachment. As the evidence did not show, as the plaintiff was bound to show, that Orcutt's apparent possession of the sleigh, was the possession of the plaintiff, rather than that of the vendor, the County Court were in error in holding that the uncontradicted evidence showed a sufficient change of possession of the sleigh, to prevent its attachment on the debt of the vendor. The evidence tended to show that the son of the vendor was told by his father to move and place in storage the sleigh for the plaintiff, but fell short of showing that he did so.

The evidence of the declaration of the vendor made after the time he testified he had sold the sleigh, that the sleigh was his, was properly excluded. He was not a party to the suit, and his declarations could not be shown as admissions. The only purpose for which they could legitimately have been shown, would be to impeach his credibility as a witness. But, to lay the foundation for their introduction for that purpose, he should have been inquired of, when on the stand, as a witness, in regard thereto, under the rules pertaining to the use of such testimony. The evidence of the cost to manufacture the several parts of the sleigh, in aid of the witness's judgment of its value at the time of the conversion, was properly admitted. Any evidence was admissible on the question of damages, which legitimately tended to show what its value was at that time. But we think the court erred in excluding testimony of what it sold for at the sheriff's sale. The question to be determined was, its cash, market value at the time of the conversion. What it sold for, near that time, at a regular sheriff's sale, advertised, and made under the guards and restrictions which the law throws round such sales, would at least have

a tendency to show its then cash, market value. If the plaintiff had been present and purchased the property, what he paid would have been the measure of his damages, unless perchance he might have lost something by having been deprived of the use of it. *Hurlbert* v. *Green*, 41 Vt. 490. Mr. Greenleaf, in his work on Evidence, vol. 2, s. 648 says: " Where the property has not been restored, the general measure of damages is the value of the thing taken, to which the jury may, in their discretion, add interest on the value ; and if the goods have been fairly sold under authority of law, the amount realized by the sale will ordinarily be taken as their true value." Any genuine sale of the property fairly made, near the time of the conversion, we understand 'may be given in evidence on the question of damages.

The judgment of the County Court is reversed, and the cause remanded.